# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 23-60610

BRETT LORENZO FAVRE,

*Plaintiff-Appellant,*

v.

SHANNON SHARPE,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI (HATTIESBURG)

## BRIEF FOR PLAINTIFF-APPELLANT

ERIC HERSCHMANN
210 Lavaca Street Suite 3009
Austin, Texas 78701
(512) 551-3344

MICHAEL J. SHEMPER
MICHAEL J. SHEMPER, PLLC
140 Mayfair Road Suite 1200
Hattiesburg, Mississippi 39402
(601) 545-7787

DANIEL R. BENSON
DANIEL J. KOEVARY
AMIT R. VORA
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Plaintiff-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

No. 23-60610

Brett Lorenzo Favre,

*Plaintiff-Appellant*,

v.

Shannon Sharpe,

*Defendant-Appellee.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Brett Lorenzo Favre – Plaintiff
Kasowitz Benson Torres LLP – Counsel for Plaintiff
Eric D. Herschmann – Counsel for Plaintiff
Daniel R. Benson – Counsel for Plaintiff
Daniel J. Koevary – Counsel for Plaintiff
Amit R. Vora – Counsel for Plaintiff
Michael J. Shemper, PLLC – Counsel for Plaintiff
Michael J. Shemper – Counsel for Plaintiff
Shannon Sharpe – Defendant
Phelps Dunbar, LLP – Counsel for Defendant
Mary Ellen Roy – Counsel for Defendant
D. Michael Hurst, Jr. – Counsel for Defendant
James W. Shelson – Counsel for Defendant
Mark Fijman – Counsel for Defendant
Williams & Connolly LLP – Counsel for Defendant
Joseph M. Terry – Counsel for Defendant

*/s/ Daniel R. Benson*

Daniel R. Benson
*Counsel for Plaintiff-Appellant*
*Brett Lorenzo Favre*

## REQUEST FOR ORAL ARGUMENT

Oral argument would be helpful to elucidate the applicability to the facts of this case of the constitutional protection from defamation liability for rhetorical hyperbole and the district court's misapplication of that protection to a statement of its own creation.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................................... i

REQUEST FOR ORAL ARGUMENT ................................................................ iii

PRELIMINARY STATEMENT ........................................................................... 1

JURISDICTIONAL STATEMENT ..................................................................... 3

QUESTION PRESENTED ................................................................................... 4

BACKGROUND .................................................................................................... 4

I.     Factual Background ...................................................................................... 4

    A.     Favre Retires from the N.F.L. and Devotes Time to Charitable Endeavors and Other Causes. ............................................................ 4

    B.     MDHS Files Suit Concerning the TANF Program and Its Misuse of Funds Through MCEC. ..................................................... 5

    C.     Sharpe Defames Favre and Favre Files Suit. ..................................... 8

II.    Procedural Background ............................................................................... 10

SUMMARY OF ARGUMENT ........................................................................... 11

STANDARD OF REVIEW ................................................................................. 13

ARGUMENT ........................................................................................................ 14

THE DISTRICT COURT'S DISMISSAL OF FAVRE'S DEFAMATION ACTION SHOULD BE REVERSED .................................................................. 14

I.     The District Court Erred in Holding That Sharpe's Remarks Were Rhetorical Hyperbole. ................................................................................ 14

A.    Sharpe's Statements Were Assertions of Fact That A
      Reasonable Listener Could Have Taken Literally. ...........................14

B.    The District Court Rewrote Sharpe's Factual Assertions. ................17

C.    Sharpe's Remarks Bear the Hallmarks of Factual Assertions,
      Not Rhetorical Hyperbole. ................................................................18

D.    The Context Confirms That Sharpe Was Speaking Literally............ 20

II.   The Alternative Bases for Dismissal Are Equally Meritless....................... 22

A.    Sharpe's Statements Are Not Protected Opinions on a Disclosed
      Factual Premise. ...............................................................................23

B.    Sharpe's Statements Are Not Privileged Reports of an Official
      Proceeding. .......................................................................................25

C.    Notice of Suit Was Not Required.......................................................27

CONCLUSION.................................................................................................29

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Baker v. Putnal,*
   75 F.3d 190 (5th Cir. 1996) ................................................................ 21

*Blake v. Gannett Co.,*
   529 So. 2d 595 (Miss. 1988) .............................................................. 24

*Brocato v. Miss. Publishers Corp.,*
   503 So.2d 241 (Miss. 1987) ............................................................... 25

*Carl as Co-Tr. of Carl/White Tr. v. Hilcorp Energy Co.,*
   91 F.4th 311 (5th Cir. 2024) .............................................................. 13

*City of Houston v. Tri-Lakes Ltd.,*
   681 So. 2d 104 (Miss. 1996) .............................................................. 28

*Doe v. Doe,*
   941 F.2d 280 (5th Cir. 1991) ............................................................. 27

*Favre v. White,*
   No. 25CI1:23 Civ. 96 (Miss. Cir. Ct.), Doc. No. 39 (Jan. 25, 2024) .... 16

*Fiber Sys. Int'l, Inc. v. Roehrs,*
   470 F.3d 1150 (5th Cir. 2006) .................................................... *passim*

*Hodge v. Engleman,*
   90 F.4th 840 (5th Cir. 2024) ............................................................. 13

*Levinsky's, Inc. v. Wal-Mart Stores, Inc.,*
   127 F.3d 122 (1st Cir. 1997) ....................................................... 18, 19

*Lewis v. Fresne,*
   252 F.3d 352 (5th Cir. 2001) ............................................................. 14

*McIntyre v. Nissan N. Am., Inc.,*
   962 F.3d 833 (5th Cir. 2020) ............................................................. 28

*Milkovich v. Lorain Journal Co.,*
   497 U.S. 1 (1990) ....................................................................... *passim*

*Montano v. Texas,*
  867 F.3d 540 (5th Cir. 2017) ............................................................ 23

*Mullen v. City of Grenada, Miss.,*
  704 F. Supp. 2d 567 (N.D. Miss. 2010) ............................................. 19

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers,*
  *AFL-CIO v. Austin,*
  418 U.S. 264 (1974) ........................................................................... 12

*Ollman v. Evans,*
  750 F.2d 970 (D.C. Cir. 1984) ........................................................... 19

*Perkins v. Littleton,*
  270 So. 3d 208 (Miss. Ct. App. 2018) ........................................... 14, 15

*Roussel v. Robbins,*
  688 So. 2d 714 (Miss. 1996) ...................................................... 11, 14, 23

*Rutila v. Dep't of Transportation,*
  12 F.4th 509 (5th Cir. 2021) ............................................................. 22

*Unelko Corp. v. Rooney,*
  912 F.2d 1049 (9th Cir. 1990) ..................................................... 13, 21, 22

*Wrought Iron Range Co. v. Boltz,*
  86 So. 354 (Miss. 1920) ..................................................................... 17

**Statutes**

28 U.S.C. § 1291 ....................................................................................... 3

28 U.S.C. § 1332 ....................................................................................... 3

Miss. Code Ann. § 95-1-5(1) ............................................................. 27, 28

**Other Authorities**

Federal Rules of Civil Procedure Rule 12(b)(6) ................................ 10, 13

Restatement (Second) of Torts § 611 (1977) ............................... 25, 26, 27

## PRELIMINARY STATEMENT

Defendant–Appellee Shannon Sharpe falsely asserted on his popular television show that Plaintiff-Appellant Brett Favre, his fellow N.F.L. Hall of Famer, "stole money" from the "underserved," and Sharpe refused to correct this false assertion even after Favre's counsel advised him that it was false and demanded that he do so.

The district court below, however, erroneously dismissed Favre's defamation action against Sharpe, on the sole ground that Sharpe's statements were mere rhetorical hyperbole, because "no reasonable person listening to the Broadcast would think that Favre actually went into the homes of poor people and took their money." But no one would think that Favre "went into homes" (which is far from the only way to steal money) because that is not what Sharpe said. He defamed Favre by stating that Favre stole money and did so from the underserved. There is no reason to conclude that Sharpe's listeners did not understand Sharpe to be saying precisely what Sharpe said.

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990) requires reversal. There, the Supreme Court made clear that statements like Sharpe's are not entitled to constitutional protection as the kind of "'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Id.* at 20 (holding that the

rhetorical-hyperbole protection is afforded to "statements that cannot reasonably [be] interpreted as stating actual facts") (citation omitted). The Court held, in language directly applicable here, that statements in a newspaper sports section article implying that a high school wrestling coach had lied under oath were not protected speech: "This is not the sort of loose, figurative or hyperbolic language which would negate the impression that the writer was seriously maintaining petitioner committed the crime of perjury." *Id.*

As in *Milkovich*, here, there is nothing "loose, figurative or hyperbolic" about Sharpe's statements that would negate the impression that his plain language imparted—that Favre stole money from poor people. Nor, as in *Milkovich*, was there anything about the "general tenor," *id.,* of Sharpe's television program to negate that impression; to the contrary, the context of Sharpe's statements during the program only confirmed the impression that Sharpe meant what he explicitly said.

Favre brought this action because he did not steal anything from anyone. Sharpe leveled his false accusation against Favre while discussing a civil lawsuit brought by a Mississippi agency that mismanaged welfare funds in which Favre is one of numerous defendants. But Favre did not steal and has not been alleged to have stolen anything. And while certain defendants have pleaded guilty to crimes, Favre did not commit any crime, he has not been charged with a crime, and no one who

pleaded guilty has implicated or could implicate Favre. It is evident that Favre, the only national celebrity among the defendants, was named in the civil lawsuit not because he did anything wrong but because of the publicity his name would attract.

In nonetheless dismissing this action on rhetorical-hyperbole grounds, thereby depriving Favre of the means to vindicate his reputation, the district court substituted a rhetorical and hyperbolic statement for Sharpe's actual statements. But the relevant statements are what Sharpe actually said, and a reasonable listener could have—and would have—understood Sharpe's actual statements to be factual assertions. Certainly there is no basis on this motion to dismiss to hold otherwise.

The district court's dismissal should be reversed and Favre's defamation claim should be reinstated.

## JURISDICTIONAL STATEMENT

The district court has federal subject-matter jurisdiction over this action under 28 U.S.C. § 1332. There was complete diversity of citizenship and the amount in controversy exceeded $75,000. (ROA.8.) This Court has appellate jurisdiction over this appeal under 28 U.S.C. § 1291. On October 30, 2023, the district court entered final judgment for Sharpe, dismissing all claims of all parties. (ROA.540.) On November 29, 2023, Favre timely filed his notice of appeal. (ROA.541.)

## QUESTION PRESENTED

Whether the district court erred in dismissing Favre's defamation claim against Sharpe on the ground that Sharpe's defamatory statements were rhetorical hyperbole as a matter of law, where the court rewrote the defamatory statements to render them rhetorical and hyperbolic, even though a reasonable listener to Sharpe's actual statements—that Favre "stole money" from "the underserved"—could and would have understood them as factual assertions about Favre.

## BACKGROUND

### I.   Factual Background

#### A.   Favre Retires from the N.F.L. and Devotes Time to Charitable Endeavors and Other Causes.

Favre, a former National Football League player, has committed himself in retirement to charitable efforts and causes in his native Mississippi—as he did during his career. (ROA.19–20 ¶15.) He and his wife founded the Favre 4 Hope Foundation, through which they have contributed millions of dollars to charities across Mississippi and elsewhere, including the Make-A-Wish Foundation of America, Hope Haven, Ribbon of Hope, and the Special Olympics. (ROA.20 ¶ 15.) Favre has also supported his alma mater, The University of Southern Mississippi ("Southern Miss"), and efforts to develop medication to treat and prevent concussions. (ROA.18 ¶ 3; ROA.20 ¶15.)

**B.     MDHS Files Suit Concerning the TANF Program and Its Misuse of Funds Through MCEC.**

Favre was named as one of numerous defendants in a 2022 lawsuit filed by the Mississippi Department of Human Services ("MDHS") to recover welfare funds allegedly originating from the Temporary Assistance for Needy Families ("TANF") federal program that MDHS alleged were unlawfully diverted by MDHS officials themselves, in part through the non-profit Mississippi Community Education Center ("MCEC"). *See generally* MDHS v. MCEC, No. 25CI1:22 Civ. 286 (Miss. Cir. Ct).

In its original complaint filed on May 9, 2022, MDHS alleged that between 2016 and 2019, MDHS's own Executive Director, John Davis, agreed with MCEC's CEO Nancy New to unlawfully divert TANF funds.  (ROA.188 ¶ 62.) MDHS's complaint did not allege that Favre knew about this agreement. New and Davis have pleaded guilty to criminal charges brought as a result of certain of these transfers. (ROA.381–93; ROA.497–98.) No criminal charges have been brought against Favre; there is no basis to bring any charges against him.

MDHS's original complaint sought to recover from Favre $1.1 million paid from MCEC to Favre's company in 2017 and 2018 for promotional services that Favre allegedly did not perform. (ROA.219 ¶ 137.)  But Favre had already repaid that $1.1 million to the State over *six months* before MDHS had filed its complaint, when

5

he learned of allegations that funds had been diverted. Favre was unaware that there were any improprieties regarding the funds he received—until May 2020 when the Mississippi State Auditor, Shadrack Tucker White, released an audit report disclosing the findings of an investigation into the misuse of TANF funds by MDHS and MCEC. Favre immediately offered to repay the funds he received, leading White to comment at the time:

> I want to applaud Mr. Favre for his good faith effort to make this right and make the taxpayers and TANF families whole. To date, we have seen no records indicating Mr. Favre knew that TANF was the program that served as the source of the money he was paid.

(ROA.500.) In late November 2022, Favre moved to dismiss the claims against him concerning the $1.1 million on the basis that, among other things, he had already repaid those funds. MDHS responded by amending its complaint to abandon all claims concerning those funds.  (*See* ROA.252–44.)

The Mississippi Auditor's May 2020 report also cited, as a possible misuse of TANF funds, MCEC's payment to Southern Miss of $5 million in MDHS funds in late 2017, partially in connection with constructing a volleyball facility at Southern Miss's campus. Before MDHS amended its complaint, and the day before Sharpe made the statements at issue, *Mississippi Today* published an article titled "Former Gov. Phil Bryant helped Brett Favre secure welfare funding for USM volleyball stadium, texts reveal." (*See* ROA.381–93.) The article discussed Favre's

6

involvement in fundraising for Southern Miss, including through communications between Favre and former Governor Phil Bryant and Nancy New. Among other falsehoods in the article, it incorrectly claimed that "Favre first asked for funding" from MDHS for the volleyball facility. (ROA.387.)  In fact, officials at MDHS offered the funding to Southern Miss as a continuation of a long-standing relationship the university and MDHS. The article also claimed that "[b]ecause of the strict prohibition on using TANF funds to pay for construction, the parties had to craft an agreement that would look to satisfy federal law and give the illusion they were helping needy families," and "[w]ith the help of legal advice from MDHS attorneys, they came up with the idea for New's nonprofit to enter a $5 million up-front lease of the university's athletic facilities, which the nonprofit would purportedly use for programming." (ROA.387.) The article did not claim that Favre was one of the "parties" that crafted an agreement to satisfy federal law or that he knew that any such agreement purportedly violated federal law—because he did not know. It also did not claim that Favre knew or believed that the agreement's provisions regarding helping needy families was an illusion—he did not know that the funds were meant for needy families.

Lastly, the article noted that Favre's then-attorney "denied that [Favre] knew the money he received was from the welfare fund," and the article quoted the

attorney as stating: "'Brett Favre has been honorable throughout this whole thing.'" (ROA.386.)

At no point did the *Mississippi Today* article or the MDHS lawsuit accuse Favre of stealing anything from anyone.

### C.     Sharpe Defames Favre and Favre Files Suit.

Sharpe co-hosted with Skip Bayless a national weekday television show, *Skip and Shannon: Undisputed*, on Fox Sports 1. (ROA.18 ¶ 4.) Between the show's inception in September 2016 and the time of this suit's filing, Sharpe's *Undisputed* had become one of Fox Sports 1's most popular shows, building a loyal following of hundreds of thousands of daily viewers. (ROA.20 ¶ 17.) YouTube clips of the show routinely received tens of thousands of views, and a podcast version of the show was available for download on Apple Podcasts, Google Podcasts, Spotify, and TuneIn (ROA.20 ¶¶ 16–17.)

On September 14, 2022, the day after the *Mississippi Today* article was published, Sharpe, during an episode of *Undisputed* which aired nationally on Fox Sports 1 to over 130,000 viewers, falsely stated that Favre was "steal[ing] from the lowest of the low" (ROA.407), that Favre was "taking from the underserved" (ROA.407), and that Favre "stole money from people that really needed that money" (ROA.409).

Later in the segment, Sharpe repeated that Favre was "taking" money that was "supposed to go to the most underserved." ROA.412. Sharpe then stated that he would never "take from Georgia's poorest that are most underserved." (ROA.421.) Sharpe further stated: "You got to be pretty low that you would take from the most underserved." (ROA.424.) Upon concluding the serious segment about Favre, the moderator assured viewers that the next segment would concern a lighter topic that they could have "fun with." (ROA.427.)

Clips from this episode of *Undisputed* were posted to YouTube and received over 1 million views, far greater than the show's clips typically receive. (ROA.21 ¶19.) Of the numerous defamatory and malicious statements that Sharpe rendered during the segment about Favre, this case concerns three in particular:

- "The problem that I have with this situation, you've got to be a sorry mofo to steal from the lowest of the low";

- "Brett Favre is taking from the underserved [in Mississippi]"; and

- "[Favre] stole money from people that really needed that money."

(ROA.20–21 ¶ 18.)

These lies have damaged Favre's reputation. (ROA.21 ¶ 21.) Sharpe also knew that his statements were false—or, at a minimum, Sharpe made his statements with reckless disregard for the fact that they were false. (*See* ROA.22 ¶ 29.) And Sharpe intended for viewers to take his statements literally. (*See* ROA.21 ¶ 21.)

9

## II.    Procedural Background

In February 2023, counsel for Favre demanded that Sharpe retract and apologize for his defamatory and malicious statements. (ROA.21 ¶ 20.) Sharpe refused, prompting Favre to file this defamation action in Mississippi state court. (ROA.21 ¶ 20.) Sharpe then removed the action to the U.S. District Court for the Southern District of Mississippi (Starrett, J.) and moved to dismiss Favre's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ROA.528.)

The district court granted the motion on the sole ground that Sharpe's statements were immune from defamation liability because they were "rhetorical hyperbole" as a matter of law. (ROA.539.) The court held: "Here, no reasonable person listening to the Broadcast would think that Favre actually went into the homes of poor people and took their money—that he committed the crime of theft/larceny against any particular poor person in Mississippi." (ROA.538.)

The court also held, at the pleading stage and without allowing the parties to develop any facts or take any discovery, that "listeners would have recognized Sharpe's statements as rhetorical hyperbole" because *Undisputed* is a "debate format sports entertainment talk show with lively, pointed banter." (ROA.538.)

This appeal followed.

## SUMMARY OF ARGUMENT

The district court dismissed Favre's complaint on one ground: the repeated accusations that Sharpe made on his television show *Undisputed*—that Favre "stole money" from "the underserved"—were rhetorical hyperbole as a matter of law. That conclusion was erroneous, as it was predicated on an outright mischaracterization of what Sharpe actually said. Nor is there any other ground to dismiss the complaint.

Under established law, a statement is rhetorical hyperbole, and thus constitutionally exempt from defamation liability, only if no reasonable listener could interpret that statement as a factual assertion. *See Milkovich*, 497 U.S. at 20; *Roussel v. Robbins*, 688 So. 2d 714, 716 (Miss. 1996). Here, a reasonable listener could and would have interpreted Sharpe's repeated statements to the effect that Favre "stole money" from "the underserved" as factual assertions about Favre. *See Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1163–64 (5th Cir. 2006) (rejecting rhetorical-hyperbole defense where company accused former directors of stealing intellectual property, which the "context" showed was literal).

The doctrine of rhetorical hyperbole thus has no relevance here. The doctrine's purpose is to ensure that defamation law does not chill expression that is valuable to our nation's discourse and that does not damage the subject's reputation

11

because no reasonable person would take it literally. Thus, when a union dubs a worker who opposes unionization a "traitor," the doctrine applies because no one thinks that the worker has committed the capital offense of treason. *See Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 285 (1974).

But here, Sharpe's statements were not rhetorical and were not hyperbolic— they accused Favre of committing particular unlawful conduct, stealing, and they were damaging to Favre's reputation. In concluding otherwise, that Sharpe's statements amounted to rhetorical hyperbole as a matter of law, and dismissing Favre's action on that basis, the district court rewrote the statements at issue. The court held that "no reasonable person listening to the Broadcast would think that Favre actually went into the homes of poor people and took their money." (ROA.538.) In essence, the district court infused Sharpe's statements with a rhetorical and hyperbolic flourish of its own making—and then held that Sharpe's statements were constitutionally protected as rhetorical hyperbole. That error warrants reversal.

The district court also held that the "entertaining" and "lively" format of *Undisputed* necessarily meant that "listeners would have recognized Sharpe's statements as rhetorical hyperbole" (ROA.538), but that holding, too, was

fundamentally flawed. Both Sharpe and his co-host, Skip Bayless, were serious during the segment about Favre. They spoke in a matter-of-fact tone, not in jest. Sharpe repeated his accusation numerous times and gave no indication that his remarks were figurative. Under the court's reasoning, shows like *Undisputed* with Sharpe and Bayless would be categorically exempt from defamation law, but that is not the law. *See Unelko Corp. v. Rooney*, 912 F.2d 1049, 1054 (9th Cir. 1990) (rejecting rhetorical-hyperbole defense where Andy Rooney claimed that a product "didn't work" during his satirical and humorous *60 Minutes* segment).

Accordingly, the district court's dismissal should be reversed. The other grounds for dismissal that Sharpe raised below are equally meritless. Favre's complaint should be reinstated.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's decision to dismiss a complaint for failure to state a claim under Rule 12(b)(6). *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024). "Rule 12(b)(6) motions are 'viewed with disfavor and rarely granted.'" *Id.* (citation omitted). In evaluating Rule 12(b)(6) motions, the court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiffs." *Carl as Co-Tr. of Carl/White Tr. v. Hilcorp Energy Co.*, 91 F.4th 311, 314 (5th Cir. 2024). "All questions of fact and any ambiguities in the

13

controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001).

## ARGUMENT

## THE DISTRICT COURT'S DISMISSAL OF FAVRE'S DEFAMATION ACTION SHOULD BE REVERSED

### I.    The District Court Erred in Holding That Sharpe's Remarks Were Rhetorical Hyperbole.

#### A.    Sharpe's Statements Were Assertions of Fact That A Reasonable Listener Could Have Taken Literally.

Under the Supreme Court's seminal decision in *Milkovich*, a statement enjoys constitutional protection from defamation liability as "rhetorical hyperbole" only if the statement "cannot reasonably be interpreted as stating actual facts about an individual."[1] *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990) (citation and punctuation omitted); *accord Roussel v. Robbins*, 688 So. 2d 714, 716 (Miss. 1996) (following *Milkovich* and holding that a statement is not protected if its "substance or gist could reasonably be interpreted" or "understood as declaring or implying a provable assertion of fact") (citation and punctuation omitted); *Perkins v. Littleton*,

---

[1] Although Mississippi law controls this diversity tort action, federal constitutional standards are applicable here because the tort of defamation implicates the First Amendment. *See, e.g.*, *Milkovich*, 497 U.S. at 21 (conducting federal and state-law inquiries).

270 So. 3d 208, 217 (Miss. Ct. App. 2018) (following *Milkovich*).

*Milkovich* thus requires reversal. There, the Supreme Court made clear that statements like Sharpe's are not entitled to constitutional protection as the kind of "'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Id.* (rhetorical hyperbole protection is afforded "statements that cannot reasonably [be] interpreted as stating actual facts") (citation omitted). The Court held, in language directly applicable here, that statements in an article in a newspaper section implying that a high school wrestling coach had lied under oath were not protected speech: "This is not the sort of loose, figurative or hyperbolic language which would negate the impression that the writer was seriously maintaining petitioner committed the crime of perjury." *Id.*

As in *Milkovich*, here, there is nothing "loose, figurative or hyperbolic" about Sharpe's statements that would negate the impression his plain language imparted— that Favre stole money from poor people. Nor, as in *Milkovich*, was there anything about the "general tenor," *id.,* of Sharpe's television program to negate that impression; to the contrary, the context of Sharpe's statements during the program only confirmed the impression that Sharpe meant what he explicitly said.

Thus, Sharpe's statements plainly *can* "reasonably be interpreted as stating actual facts" about Favre, *Milkovich,* 497 U.S. at 20*,* and they therefore are not

protected from defamation liability as rhetorical hyperbole. There was no ambiguity as to the common meaning of Sharpe's statements—Favre stole from poor people. Nor was there anything in the context in which Sharpe made his statements that would have led anyone to believe otherwise. *See, e.g.*, *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1163 (5th Cir. 2006) (defamation claim upheld where, as here, the "common meaning of [the] statements imputed the crime of theft," and the "surrounding circumstances present no factors that would alter the meaning of the statements").

Notably, Mississippi State Auditor White, after praising Favre for returning funds to MDHS, later also falsely accused Favre of stealing welfare funds. Favre brought a defamation action against him in Mississippi state court, which was upheld on White's motion to dismiss. *Favre v. White*, No. 25CI1:23 Civ. 96 (Miss. Cir. Ct.), Doc. No. 39 (Jan. 25, 2024) (denying White's motion to dismiss Favre's defamation action). But even though White made materially the same false accusations as Sharpe, White never argued that his statements were rhetorical hyperbole, further evidencing that a reasonable listener could and would have taken Sharpe literally.

Reversing the district court's misapplication of the doctrine of rhetorical hyperbole is important because, as *Milkovich* recognized, expanding the scope of the rhetorical-hyperbole exception has a significant societal cost: "we have regularly

acknowledged the important social values which underlie the law of defamation, and recognized that society has a pervasive and strong interest in preventing and redressing attacks upon reputation." 497 U.S. at 22 (citation and punctuation omitted). For that reason, the right to defend one's "good name" and "reputation" through a defamation claim is deeply and firmly rooted in Mississippi common law. *See, e.g.*, *Wrought Iron Range Co. v. Boltz*, 86 So. 354, 355 (Miss. 1920).

## B.    The District Court Rewrote Sharpe's Factual Assertions.

The district court held that "no reasonable person listening to the Broadcast would think that Favre actually went into the homes of poor people and took their money" (ROA.538). But that is not what Sharpe said. Sharpe accused Favre of stealing from, not of burglarizing the homes of, poor people. *See, e.g.*, "Steal," Oxford English Dictionary Online (defining "steal" as "to take away dishonestly," and "esp. to do this secretly or unobserved"; and "in a wider sense," to "take or appropriate dishonestly (anything belonging to another, whether material or immaterial)"). Instead, Sharpe uttered statements that, unlike the district court's rewritten statement, a reasonable person very well could have taken factually.

In other words, the district court applied its own rhetorical and hyperbolic flourish to Sharpe's words—and then held them nonactionable as rhetorical hyperbole. But, as the First Circuit has stated, "[t]he First Amendment does not

17

allow courts to distort the reality of events under the guise of protecting freedom of expression," and "a reviewing court must evaluate a speaker's statement as it was given and must resist the temptation to replace what was actually said." *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 131 (1st Cir. 1997). Here, "what was actually said" was defamatory and is actionable.

### C.    Sharpe's Remarks Bear the Hallmarks of Factual Assertions, Not Rhetorical Hyperbole.

As this Court's decision in *Fiber Systems* confirms, Sharpe's statements were not rhetorical hyperbole. *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150 (5th Cir. 2006). There, former officers of a fiber optics company alleged that the company had falsely accused them of being thieves and stealing intellectual property when they left. *Id.* at 1155 The company, FSI, countered that in the "context of the ongoing, heated controversy between FSI and the defendants, no person of ordinary intelligence could believe that FSI's statements were anything more than rhetorical outbursts of an angry and frustrated business owner, much less a real accusation of theft." *Id.* at 1163–64. But this Court rejected that argument, reasoning that the "accusation of theft, in context, did not refer to activities readily identifiable to the listener as innocuous … but instead referred to the defendants' alleged misappropriation of FSI's intellectual property." *Id.* at 1164.

Sharpe's statements share the features that, under *Fiber Systems*, render them

defamatory accusations and not rhetorical hyperbole. They were statements of purported fact which, as in *Fiber Systems,* did not refer to activities readily identifiable as innocuous. Likewise, in *Levinsky's*, the statement by a Walmart manager that a competing clothing store, Levinsky's, would put telephone customers on hold for twenty minutes was held "sufficiently factual to be proved true or false," could "be verified or rebutted by objective evidence" (e.g., "how Levinsky's staff handled telephone calls"), and was "not inherently implausible." 127 F.3d at 131. "A reasonable listener," therefore, "could interpret the '20 minutes' comment as a statement of fact about Levinsky's business practices." *Id.*; *see also Mullen v. City of Grenada, Miss.*, 704 F. Supp. 2d 567, 575 (N.D. Miss. 2010) (holding that an accusation that a police officer was a "drug addict" was not "rhetorical hyperbole" because it "can be distilled to the essence of truth or falsity" and could be "shown to be true or false").

In addition, an accusation of unlawful conduct is a "classic example of a statement with a well-defined meaning" that falls outside the scope of rhetorical hyperbole. *See Ollman v. Evans*, 750 F.2d 970, 979–80 (D.C. Cir. 1984); *see also Fiber Sys.*, 570 F.3d at 1163–64; *Milkovich*, 497 U.S. at 21 (holding that the implication that petitioner had lied under oath was "not the sort of loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously

19

maintaining that petitioner committed the crime of perjury").

Here, Sharpe did not phrase his statements so as to indicate that they were rhetorical hyperbole—instead, he made an accusation of unlawful conduct, which he repeated throughout the segment. And unlike the district court's exaggerated version of Sharpe's accusation, Sharpe's actual accusation was not implausible (though it was wholly false). *See, e.g.*, *Fiber Sys.*, 470 F.3d at 1163–64. Sharpe's accusation of unlawful conduct was not rhetorical hyperbole.

### D.    The Context Confirms That Sharpe Was Speaking Literally.

The district court concluded that *Undisputed*'s format—"a debate format sports entertainment talk show with lively, pointed banter"—necessarily meant that "[l]isteners would have recognized Sharpe's statements as rhetorical hyperbole" (ROA.538), but that conclusion is fundamentally flawed.

During the segment about Favre, Sharpe's and Bayless's tone, demeanor, and language were serious. The moderator introduced and concluded the segment by referring to news articles (ROA.406, 427); Shannon and Bayless also referred to news articles and to the MDHS litigation throughout the segment, and, upon ending the segment, the moderator noted that the show would turn to a topic which, unlike the discussion about Favre, would be light-hearted (ROA.427). The motif of the segment was Sharpe's repeated factual assertion that Favre "stole money" from

"the underserved." See *supra* at 8–9. There was no banter about that assertion, which was not up for debate. It was conveyed as the truth.

In erroneously reasoning that, because *Undisputed* was entertaining and because Sharpe and Bayless would trade barbs, listeners would know that Sharpe was just kidding, the district court also failed, as it was required to do on this motion to dismiss, to view the facts in the light most favorable to Favre. *See, e.g.*, *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) (reversing dismissal because district court failed to "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff").

The Ninth Circuit rejected an argument similar to the district court's reasoning in *Unelko Corp. v. Rooney*, 912 F.2d 1049 (9th Cir. 1990). There, a company sued the humorist Andy Rooney for saying during his popular segment on *60 Minutes* that its Rain-X product "didn't work." The Ninth Circuit determined that, even though the tenor of Rooney's regular *60 Minutes* segment was "humorous and satirical" and the segment was "characterized by hyperbole," and even though Rooney had made other comments about Rain-X in the same breath that were "rhetoric," the specific statement at issue—that Rain-X "didn't work"—was "not couched in loose, figurative, or hyperbolic language." *Id.* at 1054. That statement "produce[d] the impression that Rooney is maintaining that Rain-X failed to perform

21

as guaranteed," and the "context" could not "negate the impression that he was making a factual assertion" meant to be taken literally. *Id.* Therefore, the court held, "the statement is not shielded from liability under the standard established in *Milkovich.*" *Id.* at 1055.

So too here, even if *Undisputed* was a "debate format sports entertainment talk show with lively, pointed banter," and even if Sharpe and Bayless employed rhetoric and hyperbole during certain segments on their show (ROA.538), the show's overall tenor cannot negate the impression that, during the segment about Favre, Sharpe made factual assertions about Favre's conduct that were meant to be taken literally. In fact, excluding Sharpe's defamation from the exception for rhetorical hyperbole is even more warranted here than in *Unelko*: there, the segment was satirical; here, the segment was serious.

## II. The Alternative Bases for Dismissal Are Equally Meritless.

As a "court of review, not of first review," this Court—after reversing the district court's ruling on rhetorical hyperbole—need not and should not reach Sharpe's other grounds of dismissal, but should rather remand for further proceedings. *See Rutila v. Dep't of Transportation*, 12 F.4th 509, 511 n.3 (5th Cir. 2021) (reversing dismissal and holding: "Mindful that we are a court of review, not of first view, we opt not to seek out alternative grounds on which we might uphold

22

the judgment."); *Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017) ("a court of appeals sits as a court of review, not of first view.") (each cleaned up).

To the extent this Court is inclined to reach Sharpe's other grounds for dismissal, they are meritless.

### A.   Sharpe's Statements Are Not Protected Opinions on a Disclosed Factual Premise.

Sharpe all but conceded below that his statements were defamatory, but he maintained that his claims were privileged because they were opinions based on "disclosed and publicly reported information," including allegations in the MDHS litigation and other public press reports. (ROA.532.) As a threshold matter, this argument fails because Sharpe made statements of fact, not opinion. As with the accusation of perjury in *Milkovich*, Sharpe's accusation that Favre stole money from the underserved "is sufficiently factual to be susceptible of being proved true or false," since determining whether Favre did so "can be made on a core of objective evidence." 497 U.S. at 21. Accordingly, "[u]nlike a subjective assertion the averred defamatory language is an articulation of an objectively verifiable event." *Id.* at 22 (citation and punctuation omitted); *accord Roussel*, 688 So. 2d at 723.

Even assuming that Sharpe's statements were opinions (and they were not), for them to have been non-actionable, Sharpe's audience needed to have been furnished the correct and complete facts underlying the opinions. As *Milkovich*

23

explained: "Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." 497 U.S. at 18–19; *see also Blake v. Gannett Co.*, 529 So. 2d 595, 605 (Miss. 1988) (observing that correct, complete facts enable listener to validly "accept[] or reject[]" the opinion).

Here, the factual basis for Sharpe's purported opinions was incorrect and incomplete. The segment began with the show's moderator summarizing an article: "Yesterday an investigation by *Mississippi Today* found that Brett Favre, along with the help of a former Mississippi governor obtained welfare funds to help build a new volleyball center at the University of Southern Mississippi." (ROA.406.) But it is simply not true that Favre "obtained welfare funds" to help build the Southern Miss volleyball facility. Also, while the article published a denial from Favre's then-attorney that Favre knew the funds at issue were welfare funds (ROA.386), Sharpe's audience was not advised of this denial.

During the segment, Sharpe also falsely stated that Favre "won't even pay the 1.1 [million dollars] back" (ROA.412), when Favre already had repaid the funds nearly a year before Sharpe's statements, as widely reported at the time. (*See* ROA.500.) And Sharpe falsely stated, "You see what Brett Favre did for his alma mater? No. He didn't give no money came out of his pocket." (ROA.409.) To the

contrary, Favre and his wife have contributed millions of dollars to Southern Miss, including in connection with the volleyball facility. Sharpe's co-host further claimed that Favre was paid $1.1 million "for giving no speeches" (ROA.412)—a reference to the allegation in the MDHS litigation that Favre did not perform services for the money he received, which is untrue.

In addition, the show omitted that MDHS, not Favre, first suggested providing funding for the volleyball facility through MCEC; that officials at MDHS determined how much funding to provide Southern Miss for the volleyball facility and proposed what became the funding structure; and that the Mississippi Attorney General, the Board of Trustees of the Mississippi Institutions of Higher Learning, Southern Miss, and numerous government officials and lawyers vetted and approved the funding structure.

### B.  Sharpe's Statements Are Not Privileged Reports of an Official Proceeding.

Sharpe's argument below that his statements were covered by the official-proceedings privilege was likewise meritless. In *Brocato v. Miss. Publishers Corp.*, 503 So.2d 241, 244 (Miss. 1987), the Mississippi Supreme Court adopted the definition of that privilege set forth in the Restatement (Second) of Torts § 611 (1977):

> The publication of defamatory matter concerning another in a report of an official action or proceedings or of a meeting open to the public that deals with a matter of public concern is privileged **if the report is**

> **accurate and complete or a fair abridgment** of the occurrence reported.

(Emphasis added). The commentary provides that the report must be "accurate" and "fair," and it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it." *Id.* § 611, cmt. f. Nor may the reporter "make additions of his own that would convey a defamatory impression, nor to impute corrupt motives to anyone, nor to indict expressly or by innuendo the veracity or integrity of any of the parties." *Id.* Further, the commentary warns that "when a newspaper publishes from day to day the report of a judicial proceeding, it may not, after reporting derogatory parts, fail to publish the further proceedings that tend to vindicate the person defamed," and "that the report of one side of a trial is not as complete as that of the other side is a factor to be considered in determining whether the report, as a whole, is unfair." *Id.*

No official report or proceeding has ever alleged or found that Favre stole anything from anyone. The operative complaint in the MDHS litigation at the time Sharpe made his defamatory statements asserted claims against Favre based on his receipt of funds that *other people allegedly stole*. Those people—including John Davis and Nancy New—have been charged with crimes. Favre has not, because he did not commit a crime, and there would be no basis for a charge. Nor has Favre been implicated in any of the plea deals or allocutions.

26

While the complaint in the MDHS litigation alleges that Favre, through his company, received welfare funds, there is no allegation that Favre knew that those funds were welfare funds or that there was any impropriety concerning those funds. (ROA.219–20 ¶¶ 137–38.) Once Favre was notified of the alleged impropriety, he agreed to and did return the funds he received to the State, a fact which was publicized *nearly a year* before Sharpe made his statements. *See supra* at 24.

In no event—including because, as noted *supra* at 23–25, Sharpe and Bayless made false statements and material omissions—could Sharpe's comments be construed as an accurate and complete or fair abridgement of the proceeding. *See Doe v. Doe*, 941 F.2d 280, 291–92 (5th Cir. 1991) (applying Restatement (Second) of Torts § 611 to hold numerous statements that differed from official report were actionable).

## C.    Notice of Suit Was Not Required.

Sharpe claimed that the complaint should be dismissed because, in his mistaken view, Miss. Code Ann. § 95-1-5(1) applies to him and Favre did not wait the requisite ten days after sending a retraction letter to commence this lawsuit. But that section is inapplicable here. It provides: "Before any civil action is brought for publication … against any radio or television station *domiciled in this state*, the plaintiff shall, at least ten (10) days before instituting any such action, serve notice

27

… on the defendant." Miss. Code Ann. § 95-1-5(1) (emphasis added).

Neither Sharpe, his show, nor the cable channel on which his show appears is a "radio or television station domiciled in this state," and he does not claim otherwise. By the plain statutory language, Section 95-1-5(1) is inapplicable to Sharpe. *See McIntyre v. Nissan N. Am., Inc.*, 962 F.3d 833, 837 (5th Cir. 2020) ("[W]hen the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction.") (citation and punctuation omitted); *City of Houston v. Tri-Lakes Ltd.*, 681 So. 2d 104, 106 (Miss. 1996) ("[T]his Court cannot omit or add to the plain meaning of the statute or presume that the legislature failed to state something other than what was plainly stated.").

## CONCLUSION

The dismissal of Favre's action should be reversed, and his complaint reinstated.

Dated:    New York, New York
          February 12, 2024

By: */s/ Daniel R. Benson*

KASOWITZ BENSON TORRES LLP

Daniel R. Benson
Daniel J. Koevary
Amit R. Vora
1633 Broadway
New York, NY 10019
212-506-1700

Eric D. Herschmann
210 Lavaca Street
Austin, Texas 78701
New York, New York 10019
512-551-3344

MICHAEL J. SHEMPER, PLLC
Michael J. Shemper
140 Mayfair Road, Suite 1200
Hattiesburg, MS 39402
601-545-7787

*Counsel for Plaintiffs–Appellant
Brett Lorenzo Favre*

## CERTIFICATE OF SERVICE

I certify that on February 12, 2024, I served a copy of the foregoing on all

counsel of record by CM/ECF.

Dated: February 12, 2024

*/s/ Daniel R. Benson*

Daniel R. Benson
*Counsel for Plaintiff-Appellant*
*Brett Lorenzo Favre*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume, typeface, and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) & (7)(B), and Fifth Circuit Rules 32.1 & 32.2.  Excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, the brief contains 6,168 words and was prepared using Microsoft Word for Microsoft Office 365 and produced in Equity A 14-point font.

Dated: February 12, 2024

*/s/ Daniel R. Benson*

Daniel R. Benson
*Counsel for Plaintiff-Appellant*
*Brett Lorenzo Favre*