# United States Court of Appeals

*for the*

# Fifth Circuit

---

Case No. 23-60610

---

BRETT LORENZO FAVRE,

*Plaintiff-Appellant,*

v.

SHANNON SHARPE,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI (HATTIESBURG)

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

ERIC HERSCHMANN
210 Lavaca Street Suite 3009
Austin, Texas 78701
(512) 551-3344

MICHAEL J. SHEMPER
MICHAEL J. SHEMPER, PLLC
140 Mayfair Road Suite 1200
Hattiesburg, Mississippi 39402
(601) 545-7787

DANIEL R. BENSON
DANIEL J. KOEVARY
AMIT R. VORA
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Plaintiff-Appellant*

# CERTIFICATE OF INTERESTED PERSONS

No. 23-60610

Brett Lorenzo Favre,

*Plaintiff-Appellant,*

v.

Shannon Sharpe,

*Defendant-Appellee.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Brett Lorenzo Favre – Plaintiff
Kasowitz Benson Torres LLP – Counsel for Plaintiff
Eric D. Herschmann – Counsel for Plaintiff
Daniel R. Benson – Counsel for Plaintiff
Daniel J. Koevary – Counsel for Plaintiff
Amit R. Vora – Counsel for Plaintiff
Michael J. Shemper, PLLC – Counsel for Plaintiff
Michael J. Shemper – Counsel for Plaintiff
Shannon Sharpe – Defendant
Phelps Dunbar, LLP – Counsel for Defendant
Mary Ellen Roy – Counsel for Defendant
D. Michael Hurst, Jr. – Counsel for Defendant
James W. Shelson – Counsel for Defendant
Mark Fijman – Counsel for Defendant
Williams & Connolly LLP – Counsel for Defendant
Joseph M. Terry – Counsel for Defendant

/s/ Daniel R. Benson

Daniel R. Benson
*Counsel for Plaintiff-Appellant*
*Brett Lorenzo Favre*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................................... i

PRELIMINARY STATEMENT .......................................................................... 1

ARGUMENT .................................................................................................... 2

THE DISTRICT COURT'S DISMISSAL OF FAVRE'S DEFAMATION
ACTION SHOULD BE REVERSED ................................................................... 2

I.    The District Court Erred in Holding That Sharpe's Remarks
      Were Rhetorical Hyperbole ............................................................... 2

      A.    A Reasonable Listener Would Have Taken Sharpe Literally .............. 2

      B.    Sharpe's Remarks Bear the Hallmarks of Factual Assertions ............. 7

      C.    Sharpe's Remarks Lack the Hallmarks of Rhetorical Hyperbole ....... 12

II.   The Alternative Bases for Affirmance Are Equally Meritless ...................... 21

      A.    Sharpe's Statements Are Not Protected Opinions on a
            Disclosed Factual Premise ................................................................. 21

      B.    Sharpe's Statements Are Not Privileged Reports of an
            Official Proceeding ........................................................................... 26

CONCLUSION ................................................................................................. 28

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Anders v. Cuevas*,
    984 F.3d 1166 (6th Cir. 2021) ................................................................9

*Bassford v. Bassford*,
    2021 WL 5358976 (D.S.C. Nov. 17, 2021) ..........................................9

*Batson v. Shiflett*,
    602 A.2d 1191 (Md. 1992) ....................................................................9

*Blake v. Gannett Co.*,
    529 So. 2d 595 (Miss. 1988) ................................................................22

*Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*,
    748 F.3d 631 (5th Cir. 2014) ..............................................................26

*Brocato v. Miss. Publishers Corp.*,
    503 So.2d 241 (Miss. 1987) ................................................................26

*Brooks v. Paige*,
    773 P.2d 1098 (Colo. App. 1988) ........................................................13

*Burns v. McGraw-Hill Broad. Co.*,
    659 P.2d 1351 (Colo. 1983) ................................................................22

*Cascabel Cattle Co., L.L.C. v. United States*,
    955 F.3d 445 (5th Cir. 2020) ................................................................4

*Cianci v. New Times Pub. Co.*,
    639 F.2d 54 (2d Cir. 1980) ....................................................................8

*Curtis Publ'g Co. v. Birdsong*,
    360 F.2d 344 (5th Cir. 1966) ................................................................6

*Doe v. Doe*,
    941 F.2d 280 (5th Cir. 1991) ..............................................................26

*Favre v. White*,
    No. 1:23 Civ. 96 (Miss. Cir. Ct.) ..........................................................6

iv

*Fiber Sys. Int'l, Inc. v. Roehrs,*
    470 F.3d 1150 (5th Cir. 2006)................................................................ 3, 7, 9, 15

*Fitch v. White,*
    No. 1:24 Civ. 174 (Miss. Chancery Ct.) ............................................................23

*Friedman v. Bloomberg L.P.,*
    884 F.3d 83 (2d Cir. 2017) ................................................................................8

*Gardner v. Martino,*
    563 F.3d 981 (9th Cir. 2009) ........................................................................... 17

*Greenbelt Coop. Publishing Assoc. v. Bresler,*
    398 U.S. 6 (1970) ................................................................................... 14, 15, 16

*Hayne v. The Innocence Project,*
    2011 WL 198128 (S.D. Miss. Jan. 20, 2011)......................................................26

*Herring Networks, Inc. v. Maddow,*
    8 F.4th 1148 (9th Cir. 2021) ....................................................................... 19, 20

*Hogan v. Winder,*
    762 F.3d 1096 (10th Cir. 2014) ........................................................................ 15

*Horsley v. Rivera,*
    292 F.3d 695 (11th Cir. 2002)..................................................................... 20, 21

*Intercity Maint. Co. v. Loc. 254, Serv. Emps. Int'l Union AFL-CIO,*
    241 F.3d 82 (1st Cir. 2001) .............................................................................. 11

*Keohane v. Stewart,*
    882 P.2d 1293 (Colo. 1994) .................................................................7, 8, 10, 12

*Khodorkovskaya v. Gay,*
    5 F.4th 80 (D.C. Cir. 2021) ............................................................................. 13

*Knievel v. ESPN,*
    223 F. Supp. 2d 1173 (D. Mont. 2002) ............................................................ 13

*Knievel v. ESPN,*
    393 F.3d 1068 (9th Cir. 2005) ........................................................................ 13

v

*Krusen v. Moss*,
105 N.Y.S.3d 607 (N.Y. App. Div. 2019) ............................................................9

*Lane v. Random House, Inc.*,
985 F. Supp. 141 (D.D.C. 1995) .......................................................................... 13

*Levinsky's, Inc. v. Wal-Mart Stores, Inc.*,
127 F.3d 122 (1st Cir. 1997) ............................................................................... 11

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) .............................................................................. 12

*McDonald v. Raycom TV Broad., Inc.*,
665 F. Supp. 2d 688 (S.D. Miss. 2009) ....................................................... 27, 28

*McDougal v. Fox News Network, LLC*,
489 F. Supp. 3d 174 (S.D.N.Y. 2020).............................................................. 17

*Milkovich v. Lorain J. Co.*,
497 U.S. 1 (1990)..............................................................................................*passim*

*Montgomery v. Risen*,
875 F.3d 709 (D.C. Cir. 2017) ........................................................................... 13

*Nguyen v. Mai Vu*,
2018 WL 5622634 (D. Colo. Oct. 30, 2018) ..................................................... 17

*Old Dominion Branch No. 496, Nat'l Assoc. of Letter Carriers,
AFL-CIO v. Austin*,
418 U.S. 264 (1974)............................................................................................. 15

*Perkins v. Littleton*,
270 So. 3d 208 (Miss. Ct. App. 2018) ............................................................... 14

*Phantom Touring, Inc. v. Affiliated Publications*,
953 F.2d 724 (1st Cir. 1992) .............................................................................. 13

*Pittman v. Gannett River States Pub. Corp.*,
836 F. Supp. 377 (S.D. Miss. 1993)............................................................. 27, 28

*Rapaport v. Barstool Sports Inc.*,
2024 WL 88636 (2d Cir. Jan. 9, 2024) ........................................... 18, 19, 24, 25

*Roussel v. Robbins*,
688 So. 2d 714 (Miss. 1996)....................................................3, 7, 8, 21

*Su v. World Kuk Sool Ass'n Inc.*,
2023 WL 5498731 (N.D. Cal. Aug. 23, 2023) ................................... 17

*Tirio v. Dalton*,
144 N.E.3d 1261 (Ill. App. Ct. 2019)..................................................9

*Unelko Corp. v. Rooney*,
912 F.2d 1049 (9th Cir. 1990)......................................................11, 18

*Vern Sims Ford, Inc. v. Hagel*,
713 P.2d 736 (Wash. App. Ct. 1986) ................................................10

## Other Authorities

Federal Rule of Civil Procedure Rule 12(b)(6) ................................. 25, 26

Bryan A. Garner, Garner's Modern English Usage (5th ed. 2022) .........................4

W. Page Keeton et al., Prosser & Keeton on the Law of Torts
(5th ed. 1984).................................................................................6

Restatement (Second) of Torts § 611 ..................................................26

## PRELIMINARY STATEMENT

Sharpe tries to obscure the dispositive question: whether a reasonable listener could have understood his statements about Favre—his repeated statements that Favre "stole money" from people in need—as factual assertions about Favre's conduct. Because the inescapable answer to that question is yes, Sharpe's false accusation is actionable defamation and not protected rhetorical hyperbole, and the district court's dismissal of Favre's defamation action should be reversed.

In fact, given the context, no reasonable listener would *not* have taken Sharpe literally. Sharpe cannot deny that he leveled his false accusation on his show *Undisputed* during a serious segment discussing Favre's purported connection to the Mississippi welfare controversy. Nor can Sharpe deny that he conveyed the accusation as if he were stating facts and repeated it throughout the segment.

Sharpe, like the district court, focuses on words that are not at issue. For example, Sharpe argues that he was employing hyperbole when he used the phrase "rob Peter to pay Paul" and when he called Favre a "sleazeball." But those remarks, even assuming they were hyperbole, do not alter the inescapable answer to the dispositive question: that Sharpe's statements that Favre "stole money" were actionable factual assertions about Favre's conduct. Reasonable listeners could and would distinguish between Sharpe's literal and figurative remarks, and his statement

that Favre "stole money" plainly falls into the literal category.

Equally meritless are Sharpe's proposed two alternative bases for affirming the district court's dismissal. *First*, Sharpe's statements were not opinions based on a disclosed factual premise. They are factual assertions, not opinions; and even if they were opinions, neither Sharpe nor his co-host Skip Bayless disclosed complete and correct factual predicates of Sharpe's statements to the audience. *Second*, Sharpe's statements were not privileged reports of official proceedings. There were no allegations in any official proceeding that Favre stole anything from anyone. Instead, the statements at issue—that Favre "stole money" from people in need— were a defamatory creation of Sharpe's own, and this Court should reverse.

## ARGUMENT

### THE DISTRICT COURT'S DISMISSAL OF FAVRE'S DEFAMATION ACTION SHOULD BE REVERSED

### I.  The District Court Erred in Holding That Sharpe's Remarks Were Rhetorical Hyperbole.

#### A.  A Reasonable Listener Would Have Taken Sharpe Literally.

Sharpe's statements fall outside the exception to defamation liability for rhetorical hyperbole because a reasonable listener could have taken the statements— that Favre "stole money" from those who "really needed that money" and "the underserved" (ROA.20–21 ¶ 18)—as making factual assertions about Favre's

conduct. *See Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990) (holding that a statement is "rhetorical hyperbole," and exempt from defamation liability, only if the statement "cannot reasonably be interpreted as stating actual facts about an individual"); *accord Roussel v. Robbins*, 688 So. 2d 714, 716 (Miss. 1996) (holding that a statement is not protected if its "substance or gist could be reasonably interpreted" or "understood as declaring or implying a provable assertion of fact").

As in *Fiber Systems*, where this Court rejected a company's defense of rhetorical hyperbole for its accusations that former directors stole intellectual property, the "context" shows that the "accusation" here did not "refer to activities readily identifiable to the listener as innocuous" but instead referred to "alleged misappropriation." *See Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1164 (5th Cir. 2006). Sharpe leveled his accusation against Favre—that Favre "stole money" from people in need—while discussing Favre's purported connection to the Mississippi welfare controversy. Sharpe conveyed that accusation in a serious and matter-of-fact tone, and he repeated it throughout the segment. (ROA.406–09, 412, 420–21, 424.) In that context, reasonable listeners could have interpreted Sharpe to mean that Favre literally "stole money" from people in need by misappropriating welfare funds (which is a wholly false accusation). The transitive verb *steal* means to misappropriate. *See, e.g.*, Oxford English Dictionary Online, "Steal" (2023)

3

(defining "steal" as "to take away dishonestly," and "esp. to do this secretly or unobserved"; and "in a wider sense," to "take or appropriate dishonestly (anything belonging to another, whether material or immaterial)").

Sharpe quips that "it seems unlikely that the average viewer of Sharpe's commentary consulted the Oxford English Dictionary while tuning in" (*see* Sharpe Br. at 26 n.11)—but that observation gets him nowhere. The inquiry here requires determining what a reasonable listener could have understood Sharpe to mean by *steal*, and this Court "often look[s] to dictionary definitions for help in discerning a word's ordinary meaning," *see Cascabel Cattle Co., L.L.C. v. United States*, 955 F.3d 445, 451 (5th Cir. 2020). The OED's definition is no outlier. *See, e.g.*, Bryan A. Garner, Garner's Modern English Usage 388 (5th ed. 2022) ("steal" means "to misappropriate"—but with "much stronger negative connotations"—and "misappropriate" means "to take for oneself wrongfully").

Because a reasonable listener could have understood Sharpe to have been using *steal* to connote the act of misappropriating welfare funds, a reasonable listener could have understood Sharpe to have been using *steal* literally. Therefore, the defense of rhetorical hyperbole does not apply.

To resist that conclusion, Sharpe tries to focus this Court on words that are not at issue. He argues at length that the phrase "rob Peter to pay Paul," which he

employed during the broadcast, was rhetorical hyperbole. (*See* Sharpe Br. at 27–28.) But Favre has not based his defamation claim on that phrase.

As shown (Favre Br. at 17), the district court also rewrote the words at issue. The court held: "Here, no reasonable person listening to the Broadcast would think that Favre actually went into the homes of poor people and took their money—that he committed the crime of theft/larceny against any particular poor person in Mississippi." (ROA.358.) But that is not what Sharpe said. And while Sharpe tries to rewrite that holding—according to Sharpe, the court meant to hold that Sharpe's statements "could not be construed literally as making factual statements alleging the crimes of theft or larceny" (Sharpe Br. at 34)—Sharpe cannot deny that the court erroneously evaluated an irrelevant issue: whether a reasonable listener "would think that Favre actually went into the homes of poor people and took their money."

Both Sharpe and the district court thus tilt at windmills and try to obscure the dispositive question: whether reasonable listeners could have construed Sharpe's false statements—the statements that Favre "stole money" from people in need—as making factual assertions about Favre's conduct. In failing to confine its analysis to that question, the court made a fundamental mistake warranting reversal.

At bottom, the defamatory words at issue—that Favre "stole money" from those who "really needed that money" and "the underserved" (ROA.20–21 ¶ 18)—

are not "imaginative" and add nothing whatsoever to the "discourse of our Nation," *see Milkovich*, 497 U.S. at 20 (citation and punctuation omitted). Unlike rhetorical hyperbole, which is unlikely to impugn the subject's character because no reasonable listener would take it literally, Sharpe's defamation could have caused a reasonable listener to falsely believe that Favre "stole money" from people in need—which Favre did not do. *See Curtis Publ'g Co. v. Birdsong*, 360 F.2d 344, 348 (5th Cir. 1966) (applying rhetorical-hyperbole defense because "no reasonable person of ordinary intelligence could believe" that the speaker was using term literally); W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 111, at 776 (5th ed. 1984) (observing that rhetorical hyperbole "is tolerated, on the theory that it will necessarily be understood to amount to nothing more."). Sharpe's remarks are not the sort that qualify as rhetorical hyperbole, and this Court should reverse.[1]

---

[1] Sharpe's contention—that *no* reasonable listener would have taken his statements literally—is at odds with the Mississippi State Auditor Shadrack Tucker White's statements about Favre. White publicly accused Favre of stealing welfare funds, and after losing a motion to dismiss Favre's defamation claim based on those false allegations, White recently doubled down on his lies by falsely and frivolously counterclaiming that Favre sought to wrongfully "obtain" and "convert" welfare funds. *Favre v. White*, No. 1:23 Civ. 96 (Miss. Cir. Ct.), Doc. 46 ¶¶ 417–18 (Feb. 6, 2024) (amended counterclaim). Sharpe mentions this counterclaim, but he fails to mention that the Mississippi Attorney General has sued White for unlawfully bringing this counterclaim and that Favre indisputably repaid the funds at issue, long before Sharpe maliciously claimed that Favre had not repaid them. *Id.*, Doc. 78 at 2 (Mar. 6, 2024) (motion to dismiss). (*Cf.* Sharpe Br. at 5 n.2.)

### B.    Sharpe's Remarks Bear the Hallmarks of Factual Assertions.

Where—as here and as in *Fiber Systems*, 470 F.3d at 1164—the defamer alleges specific misconduct, and neither the language nor the context shows that the statement should not be taken literally, the statement is a quintessential factual assertion for which the defense of rhetorical hyperbole should not apply.

In *Milkovich*, for example, the Supreme Court held that implying in an article that the plaintiff had lied under oath was "not the sort of loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining that [the plaintiff] committed the crime of perjury." 497 U.S. at 21.

Likewise, in *Keohane* from the Colorado Supreme Court—which the Mississippi Supreme Court endorsed in *Roussel*, 688 So. 2d at 716, 723—a city council member suggested, through sharp questions, that a judge had accepted a bribe: *e.g.*, "do you think he was paid off in cash or cocaine?" *Keohane v. Stewart*, 882 P.2d 1293, 1296 (Colo. 1994). The court held that "the questions [were] not phrased in such a manner to indicate that they [were] merely rhetorical hyperbole." *Id.* at 1303. Instead, the questions simply conveyed that the judge "took some type of bribe and [the speaker] wanted to know how he was paid." *Id.* The court further stated: "Most importantly, the question under these circumstances implied a criminal action and we have approved of a holding that accusations of criminal activity, even

7

in the form of opinion, are not constitutionally protected." *Id.* at 1304 (citing *Burns v. McGraw-Hill Broad. Co.*, 659 P.2d 1351, 1359 (Colo. 1983)). Since the Mississippi Supreme Court, in *Roussel*, observed that *Keohane* had "properly explained" applicable libel standards, *Keohane* is especially instructive here. *See* 688 So. 2d at 723 (adopting *Keohane*'s holding that the "inquiry is whether the statement could be reasonably understood as declaring or implying a provable assertion of fact").

In *Cianci*, similarly, the Second Circuit held that remarks in an article implying that a mayor had committed rape and paid the alleged victim not to bring charges "were not employed in a loose, figurative sense or as rhetorical hyperbole." *Cianci v. New Times Pub. Co.*, 639 F.2d 54, 64 (2d Cir. 1980). As the court reasoned, "a jury could find that the effect of the article was not simply to convey the idea that [the mayor] was a bad man unworthy of the confidence of the voters of Providence but rather to produce a specific image of depraved conduct." *Id.*[2] Just so here, Sharpe's language did not signal that he was employing rhetorical hyperbole.

Contrary to Sharpe's claim that there is a "rich rhetorical tradition" of presumptively protecting allegations of stealing as rhetorical hyperbole (*see* Sharpe

---

[2] *See also Friedman v. Bloomberg L.P.*, 884 F.3d 83, 97 (2d Cir. 2017) ("[A] reasonable reader could interpret [the employer's] use of the word 'extort' here as more than just 'rhetorical hyperbole' describing [the employer's] belief that the lawsuit was frivolous.").

Br. at 18), courts routinely hold that accusing someone of stealing is actionable defamation and not rhetorical hyperbole. *See, e.g.*, *Fiber Systems* 470 F.3d at 1155 (misappropriating intellectual property); *Anders v. Cuevas*, 984 F.3d 1166, 1186 (6th Cir. 2021) (rejecting city-council member's argument that towing company's defamation claim—based on accusation that it was "victimizing and stealing from the residents"—could be deemed rhetorical hyperbole without factual development); *Bassford v. Bassford*, 2021 WL 5358976, at *4 (D.S.C. Nov. 17, 2021) (holding that defendant's statement—that plaintiff had "misappropriated funds" in checking account—was not "rhetorical hyperbole because it could reasonably be understood to convey a false representation of fact"); *Krusen v. Moss*, 105 N.Y.S.3d 607, 610 (N.Y. App. Div. 2019) (holding that political rival's statement that plaintiff was "pilfering free gas from taxpayers" (via county-issued gas credit card) was "susceptible to a defamatory meaning," because it conveyed "serious impropriety and, at worst, criminal behavior"); *Tirio v. Dalton*, 144 N.E.3d 1261, 1278 (Ill. App. Ct. 2019) ("[T]he statements that [political rival] had a secret slush fund and had taken taxpayer-funded vacations are so specific that they go beyond political hyperbole, as there is nothing in the context to suggest that they could not be reasonably interpreted as stating actual facts."); *Batson v. Shiflett*, 602 A.2d 1191, 1211 (Md. 1992) (holding that national union president's accusations—that local

9

union president had "misused and embezzled union funds"—were not "mere rhetorical hyperbole," because "the impact of [defendant's] statements is that [plaintiff], in fact, was guilty of these various crimes"); *Vern Sims Ford, Inc. v. Hagel*, 713 P.2d 736, 741 (Wash. App. Ct. 1986) (holding that car purchaser's statements that dealer and seller were "thieves, as accusations of criminal activity, as not constitutionally protected opinions").

Although Sharpe urges that his specific accusation of stealing was an emotional outburst and not intended to convey the truth (*see* Sharpe Br. at 31), his claim that he was speaking figuratively, not literally, is a *post hoc* confabulation contradicted by his serious tone and demeanor while making the accusation; his decision to repeat the accusation; and the serious nature of the *Undisputed* segment on Favre and the Mississippi welfare controversy. (ROA.406–09, 412, 420–21, 424.) Viewing the facts in the light most favorable to Favre—as required at this pleading stage—reasonable listeners would have inferred that Sharpe was making factual assertions, even if he was emotional. As *Keohane* illustrates, an emotional statement is not necessarily—and frequently is not—rhetorical hyperbole. *See* 882 P.2d at 1303 (declining to grant rhetorical-hyperbole status to pointed questions).

Equally unavailing is Sharpe's contention that his hyperbolic language elsewhere during the segment rendered the accusation at issue hyperbole. (*See*

10

Sharpe Br. at 36.) Even assuming that the other language Sharpe used was hyperbolic, a reasonable listener can be expected to distinguish between Sharpe's literal and non-literal statements. That is, a reasonable listener could understand Sharpe to have been speaking literally when he accused Favre of stealing money from people in need, while at the same time realizing that Sharpe was not speaking literally when he called Favre a "sleazeball" (ROA.413). *See, e.g.*, *Intercity Maint. Co. v. Loc. 254, Serv. Emps. Int'l Union AFL-CIO*, 241 F.3d 82, 89 & n.6 (1st Cir. 2001) (union's statement that janitorial company had exposed cleaners to "chemical and biological hazards" was not rhetorical hyperbole—despite other statements that the company was a "sweatshop," a "plague," and an "infestation," and that the manager was a "bloodsucking, plantation-minded boss"); *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 128, 131 (1st Cir. 1997) (clothing store's statement that competitor put telephone customers on hold for twenty minutes was not rhetorical hyperbole—despite other statement that store was "trashy"); *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1054 (9th Cir. 1990) (Andy Rooney's statement on satirical *60 Minutes* program that windshield wiper "didn't work" was not rhetorical hyperbole—despite other figurative commentary).

While Sharpe tries to distinguish *Milkovich*, *Fiber Systems*, *Unelko* and other cases on the ground that the defendants there based their defamatory statements on

11

asserted "personal knowledge" (*see* Sharpe Br. at 40–43), that distinction is meaningless. None of those decisions, nor any other, suggests that personal knowledge is a factor in the rhetorical-hyperbole analysis. Indeed, the city council member in *Keohane* did not purport to base his accusation (that a judge had accepted a bribe) on personal knowledge—yet he was denied the defense of rhetorical hyperbole. 882 P.2d at 1303.

Sharpe also begs the question in attempting to distinguish *Fiber Systems* on the additional ground that the court there held that "on the facts of that case" the statements "constituted literal accusations of misappropriation." (*See* Sharpe at 42.) On the facts of this case, there is no question but that a reasonable listener would have interpreted Sharpe's statements as literal accusations of misappropriation.

Finally, Sharpe has no answer to Favre's argument (*see* Favre Br. at 21) that the district court categorically failed to construe the facts in Favre's favor, as required at the pleading stage. *See, e.g.*, *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 244 (5th Cir. 2009) (reversing district court for failing to "accept as true the well-pleaded factual allegations in the complaint during the pleadings stage").

### C.    Sharpe's Remarks Lack the Hallmarks of Rhetorical Hyperbole.

Sharpe cites decisions where courts have categorized statements as rhetorical hyperbole, but those decisions fortify the conclusion that the district court here erred

in shoehorning Sharpe's statements into that category. For example, Sharpe's repeated statements at issue—that Favre "stole money" from people in need—did not employ slang, innovative words with imprecise meanings, or metaphysically implausible epithets. Sharpe thus misplaces his reliance (*see* Sharpe Br. at 24, 35, 37) on decisions such as *Knievel*, where the Ninth Circuit protected, as rhetorical hyperbole, ESPN's statement that stunt performer Evil Knievel was a "pimp." *Knievel v. ESPN*, 223 F. Supp. 2d 1173, 1181 (D. Mont. 2002) ("as slang, 'pimp' can mean 'cool'"), *aff'd*, 393 F.3d 1068, 1078 (9th Cir. 2005). So too with the D.C. Circuit's decision that it was rhetorical hyperbole for an author to accuse a software designer of being a "maestro" whose claimed program was a "hoax"; and with the First Circuit's decision that it was rhetorical hyperbole for the Boston Globe to dub a comedic rendition of the play *The Phantom of the Opera* a "rip-off, a fraud, a scandal, a snake-oil job." *Montgomery v. Risen*, 875 F.3d 709, 714 (D.C. Cir. 2017); *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 728 (1st Cir. 1992); *see also Khodorkovskaya v. Gay*, 5 F.4th 80, 86 (D.C. Cir. 2021) (protecting statements in the play *Kleptocracy*, a work of "historical fantasy"); *Lane v. Random House, Inc.*, 985 F. Supp. 141, 150–51 (D.D.C. 1995) (protecting imprecise accusation that author was "guilty of misleading the American public"—unlike precise accusation here); *Brooks v. Paige*, 773 P.2d 1098, 1101 (Colo. App. 1988) (protecting vague accusation that

soccer player was "backing out" on team—unlike specific accusation here).

In several of Sharpe's authorities, moreover, the context reveals that it would defy commonsense to literally construe a facially factual assertion. (*See* Sharpe Br. at 22–24.) Not so here. In *Perkins*, for example, the Mississippi Court of Appeals considered a radio advertisement by a candidate for a circuit court judgeship who claimed that the father of one of his opponents had "conspired" with the candidate's family to "go public with a family dispute to derail" his campaign. *Perkins v. Littleton*, 270 So. 3d 208, 210 (Miss. Ct. App. 2018). That father urged the court to construe the statement as "an accusation" that he "was a member of a *criminal* conspiracy." *Id.* at 216–17 (emphasis in original). In light of the context, however, the court reasoned that "no reasonable listener would have understood the radio ad's brief reference to [the father] as charging him with a crime." *Id.* at 217–18. Similarly, in *Greenbelt*, the Supreme Court held that describing a city developer's negotiating tactics as "blackmail," in the context of tough negotiations between the developer and the city over zoning variances, could not be construed as charging the developer with committing a crime, but rather could be construed only as a statement that the developer's "negotiating position [is] extremely unreasonable." *Greenbelt Coop. Publishing Assoc. v. Bresler*, 398 U.S. 6, 14 (1970) ("It is simply *impossible* to believe that a reader who reached the word 'blackmail' in either article would not have

understood exactly what was meant: it was [the developer's] public and wholly legal negotiating proposals that were being criticized.") (emphasis added). And in *Letter Carriers*, the Supreme Court held that characterizing workers who refused to join a union as "traitors," in the context of a heated labor dispute, could not reasonably be understood as criminally charging them with committing the capital offense of treason. *Old Dominion Branch No. 496, Nat'l Assoc. of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 285 (1974) ("It is similarly *impossible* to believe that any reader of the [newsletter] would have understood the newsletter to be charging the appellees with committing the criminal offense of treason.") (emphasis added).[3]

Here, however, the context has the opposite effect: it bolsters, rather than undermines, the conclusion that a reasonable listener would have understood Sharpe's false statements as factual, literal assertions about Favre's conduct. As this Court explained, whereas in *Fiber Systems*, the "accusation of theft," "in context," referred to the prior directors' "alleged misappropriation of FSI's intellectual property," in *Greenbelt*, the "accusation of blackmail," "in context," referred to "the unreasonableness of legal negotiating proposals." *Fiber Systems*, 470 F.3d at

---

[3] *See also Hogan v. Winder*, 762 F.3d 1096, 1108 (10th Cir. 2014) (categorizing, as rhetorical hyperbole, accusation that former state-agency contractor had "extorted" agency, because the "accusation was made in the heat of a nasty employment dispute").

1164. This case falls within the *Fiber Systems* camp, not within the *Greenbelt* camp.

In this vein, Sharpe is mistaken to rely on the Ninth Circuit's decision in *Mattel*. (*See* Sharpe Br. at 24, 28.) There, the band Aqua sued Mattel for defamation based on Mattel's statement that the band's disclaimer on the song *Barbie Girl*—which disclaimed the song's approval by Mattel and provided that the song was "social commentary"—was "akin to a bank robber handing a note of apology to a teller during a heist." *Mattel, Inc. v. MCA Recs.*, Inc., 296 F.3d 894, 908 (9th Cir. 2002). The court held that Mattel's metaphor was rhetorical hyperbole. *Id.* But here, the context could not have compelled a reasonable listener to believe that Sharpe was speaking metaphorically. Sharpe did not say that Favre was engaging in conduct "akin" to stealing money from people in need; and given the context, a reasonable listener could have, and inexorably would have, concluded that Sharpe was speaking literally, not metaphorically.

There is no basis for Sharpe's claimed "rich rhetorical tradition" of presumptively protecting, as rhetorical hyperbole, allegations of stealing or other forms of misconduct. (*See* Sharpe Br. at 18, 26–29, 37.) As noted, the reverse is true: a specific accusation of misconduct typically is *not* deemed rhetorical hyperbole. See *supra* at 9–10. And even if, in some cases, the circumstances might show that allegations of stealing or other misconduct are rhetorical hyperbole, such

circumstances are not present here. That distinction renders inapposite *Gardner* and other decisions on which Sharpe relies. *See Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (protecting a radio show host's statement that a dealer of a defective jet ski was a "liar," and noting that the case was "factually distinguishable" from *Milkovich* because the host "did not accuse [plaintiff] of committing a serious civil and/or criminal violation"); *Su v. World Kuk Sool Ass'n Inc.*, 2023 WL 5498731, at *8 (N.D. Cal. Aug. 23, 2023) (protecting statements that plaintiff was a "con man" and "liar' who "steal[s] money from the unsuspecting" to "further[] his own egocentric agenda"—while noting that such statements "might be considered statements of fact under some circumstances"); *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 183 (S.D.N.Y. 2020) ("The context in which the offending statements were made here make it abundantly clear that Mr. Carlson was not accusing Ms. McDougal of actually committing a crime."); *Nguyen v. Mai Vu*, 2018 WL 5622634, at *8 (D. Colo. Oct. 30, 2018) (protecting statements during "heated, passionate" family dispute: "It also simply defies logic that Plaintiffs' parents properly understood, much less actually believed, any of the alleged name-calling by Defendants—e.g., that Plaintiffs literally were thieves, as opposed to bad business partners who had done their cousins wrong") (punctuation omitted).

Sharpe is also off the mark in suggesting that talk show hosts and sports media

personalities enjoy a presumption that their commentary is rhetorical hyperbole. *Unelko* undermines this misguided notion. 912 F.2d at 1054. There, the Ninth Circuit concluded that the well-known satirical nature of Andy Rooney's popular program on *60 Minutes—A Few Minutes with Andy Rooney*—could not immunize his commentary from defamation liability. *Id.* (holding that statement that a windshield wiper "didn't work" was not rhetorical hyperbole). And although Sharpe cites the Second Circuit's decision in *Rapaport* for support, Sharpe omits key facts. (*See* Sharpe Br. at 37–38.) There, comedian Michael Rapoport brought a defamation claim against Barstool Sports, a sports media company that had employed him as a podcaster. *Rapaport v. Barstool Sports Inc.*, 2024 WL 88636, at \*3 (2d Cir. Jan. 9, 2024). The company fired him after he insulted company supporters and its founder, David Portnoy, which led to a "hostile, vulgar, and hyperbolic feud" and remarks that Rapaport was a "stalker," had committed domestic abuse, and had a venereal disease. *Id.* at \*3–4. The remarks were made in an online video, *Fire Rap*—

> [a] six-minute long so-called 'diss track' [by] the Barstool Defendants rapping a constant stream of insults and slurs about Rapaport against a backdrop of unflattering video clips and images of Rapaport. The video also reproduces the clip of Portnoy publicly announcing that Rapaport had been fired as well as the photoshopped picture that Rapaport tweeted in response, wherein Rapaport appears to engage in anal sex with Portnoy, along with several other images and video clips that were obviously doctored, further underscoring the non-factual nature of the piece.

*Id.* at \*4 (citations and punctuation omitted). The Second Circuit's holding that such

18

comments were rhetorical hyperbole therefore has no persuasive value here, where Sharpe made his comments during a serious discussion about Favre's purported connection to the Mississippi welfare controversy—not on a farcical, non-factual "diss track" that created a context "within which even certain ostensibly factual statements could be reasonably understood as part of a tasteless effort to lampoon." *See id.* (citation and punctuation omitted). And unlike Rapoport, Favre has said nothing to fuel a hyperbolic feud with his defamer. *See id.*

Nor does the Ninth Circuit's decision in *Herring Networks* stand for the proposition that news and sports talking heads are cloaked with presumptive rhetorical-hyperbole immunity from defamation liability. (*See* Sharpe Br. at 25 (citing district court decision; failing to cite Ninth Circuit affirmance).) There, MSNBC host Rachel Maddow, describing a report that an employee of One America News Network (OAN) had freelanced for a Russian propaganda outlet, stated—with "gleeful astonishment"—that OAN was "paid Russian propaganda." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1158 (9th Cir. 2021). Because Maddow had leaped from "precise factual recitations" regarding the story about the employee to the "particularly emphatic and unfounded" statement that OAN itself was Russian propaganda, reasonable listeners "would understand Maddow's contested statement as an obvious exaggeration." *Id.* at 1160 (citations and punctuation

19

omitted). Here, however, Sharpe's challenged remarks—that Favre "stole money" from people in need—was not "sandwiched between precise factual recitations," *see id.* Instead, Sharpe repeated that accusation throughout the serious segment about Favre and the Mississippi welfare controversy, and he maintained a serious tone. (ROA.406–09, 412, 420–21, 424.) Unlike with Maddow's obviously exaggerated remark about OAN, no semantic or tonal shift signaled to the viewer that Sharpe's precise factual assertation about Favre was rhetorical hyperbole.

The Eleventh Circuit's decision in *Horsley* similarly does not support Sharpe's proffered talking-head privilege. (*See* Sharpe Br. at 23, 38.) There, the court protected, as rhetorical hyperbole, talk show host Geraldo Rivera's statement that anti-abortion activist Neal Horsley was an "accomplice" to a doctor's murder. *Horsley v. Rivera*, 292 F.3d 695, 702 (11th Cir. 2002). Absent from Sharpe's description of the case is the "[m]ost significant" factor in the court's analysis— that the activist "himself acknowledged that he understood Rivera to be speaking in a figurative rather than literal sense as soon as Rivera's statement was made":

> As soon as Rivera stated "You are an accomplice to homicide, Mr. Horsley," Horsley retorted "You are too, because you're—you're showing exactly the same information[.] You're a collaborator just like I am, if that's true." Based on this response, it is clear not only that Horsley believed that Rivera was speaking on a figurative level, but also that Horsley by his own statements was creating the impression on the audience that the dialogue was taking place on an animated, non-literal plane. … Horsley's response itself is contrary to his assertion that Rivera's viewers must have understood the statement as a literal

assertion that Horsley could be criminally charged for his acts.

*Id.* Here, in contrast, Favre did nothing to create the impression that Sharpe made his accusation "on an animated, non-literal plane." *See id.* Meanwhile, Sharpe's accusation was the segment's motif, and he gave the audience no indication—through speech, tone, or demeanor—that his accusation was rhetorical hyperbole.

## II.    The Alternative Bases for Affirmance Are Equally Meritless.

### A.    Sharpe's Statements Are Not Protected Opinions on a Disclosed Factual Premise.

This Court should decline to affirm the district court's dismissal on the alternative basis—which the district court did not reach—that Sharpe's statements were protected opinions based on publicly disclosed factual premises. (*See* Sharpe Br. at 46.) For one, Sharpe's accusation—that Favre "stole money" from people in need—is not a protected opinion, as it "is sufficiently factual to be susceptible of being proved true or false." *See Milkovich*, 497 U.S. at 21; *see also Roussel*, 688 So. 2d at 723 ("A statement, even if phrased as an opinion, will not enjoy constitutional protection if the court concludes that its substance or gist could reasonably be interpreted as declaring or implying an assertion of fact.") (citing *Keohane*, 882 P.2d at 1302 (holding that the "phrasing of the assertion indicates that [the defendant] was stating a fact")). As in *Milkovich*, determining whether Favre stole money "can be made on a core of objective evidence," and "[u]nlike a subjective assertion the

averred defamatory language is an articulation of an objectively verifiable event." 497 U.S. at 21–22 (citation and punctuation omitted).

Moreover, Sharpe disregards the proposition that "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if [the speaker's] assessment of them is erroneous, the statement may still imply a false assertion of fact." *Milkovich*, 497 U.S. at 18–19; *accord Blake v. Gannett Co.*, 529 So. 2d 595, 605 (Miss. 1988) (holding that statement was protected because writer disclosed facts and thereby "left to the reader, the role of accepting or rejecting [the] opinion"); *Burns v. McGraw-Hill Broad. Co.*, 659 P.2d 1351, 1360 (Colo. 1983) ("The [defendant's] statement that [the plaintiff] 'deserted' her husband after he was injured was not supported by disclosed facts or circumstances which would allow an average listener to evaluate the purported opinion.").

Even if Sharpe's accusation was an opinion (and it was not), it is actionable because Sharpe's audience was never provided with a correct and complete factual basis underlying the opinion. The segment began with a moderator telling the viewership: "Yesterday an investigation by *Mississippi Today* found that Brett Favre, along with the help of a former Mississippi governor obtained welfare funds to help build a new volleyball center at the University of Southern Mississippi." (ROA.406.) But Favre never obtained funds to help build the University of Southern Mississippi

("Southern Miss") volleyball facility, and the Mississippi government has not alleged otherwise. Then, Sharpe's co-host, Skip Bayless, disclosed that the Mississippi Department of Human Services ("MDHS") had filed "a civil lawsuit against [Favre] because he had not paid back the interest he owed on the 1.1 million [dollars] that he was fraudulently given for giving no speeches." (ROA.411–12.) But that disclosure was false in multiple respects. MDHS has never sued Favre on that basis; and Favre performed services in exchange for payment. *See Fitch v. White*, No. 1:24 Civ. 174 (Miss. Chancery Ct.), Doc. 2 ¶¶ 18–19 (Feb. 22, 2024) (Mississippi Attorney General, in lawsuit against Mississippi State Auditor, stating that MDHS "did not seek the $1.1 million from Favre because he had, by that time, repaid the $1.1 million," and that MDHS has not brought an "interest claim").

Making matters worse, *after* Bayless's statement, Sharpe falsely stated: "[Favre] won't even pay the 1.1 [million dollars] back. He won't even pay the interest on the money." (ROA.412.) Yet Favre had already repaid the $1.1 million nearly one year before Sharpe's statement, as widely reported at the time. (*See* ROA.499–502 (reporting that Favre had repaid the $1.1 million).) So, although Sharpe on appeal argues that the segment left "no possible confusion for viewers" on whether Favre returned the $1.1 million payment (*see* Sharpe Br. at 49), the transcript belies that argument.

The segment also omitted numerous critical facts. In addition to omitting the fact that the *Mississippi Today* article had published the truthful denial by Favre's counsel that Favre knew the funds at issue were welfare funds (ROA.386), the segment omitted: that Southern Miss had planned on using the volleyball facility to benefit the surrounding community by hosting "camps and clinics, classes, community events, seminars and group meetings" (ROA.505); that Southern Miss officials, not Favre, first suggested obtaining funding for the facility through the nonprofit Mississippi Community Education Center ("MCEC"); that MDHS officials proposed the funding structure and determined the amount; and that the Mississippi Attorney General, the Board of Trustees of the Mississippi Institutions of Higher Learning, Southern Miss, and numerous public officials and lawyers vetted, approved, and celebrated the funding structure—as the evidence in this case would show, and as the evidence in the MDHS civil litigation has established.

Sharpe's reliance on the Second Circuit's decision in *Rapaport* again undermines his argument. (*See* Sharpe Br. at 49.) There, the court held that certain statements in the "diss track" video clip discussed above were non-actionable for an alternative reason besides rhetorical hyperbole: while defendant Portnoy's audio in the clip stated that plaintiff Rapaport had a "stalking charge" (which was a statement at issue), the simultaneous imagery in the clip was a screenshot of an article stating

that Rapaport had been sentenced for harassing his ex-girlfriend. 2024 WL 88636, at *4. The Second Circuit therefore affirmed the district court's conclusion that "[a] reasonable viewer would understand Portnoy's comments to be conveying his (erroneous) understanding of the charges described in the article that was simultaneously presented to the audience, and thus the comments are protected opinions." *Id.* But here, Sharpe did not present a factual predicate simultaneously with his defamation that would have permitted the audience to understand that he was speculating when he accused Favre of stealing money from people in need.

This Court should reject Sharpe's attempt to downplay these issues as "quibbles" with details. (*See* Sharpe Br. at 48.) The combination of material misstatements and omissions deprived the audience of the ability to judge Sharpe's comments for themselves. Because Sharpe's statements were not protected opinions based on publicly disclosed factual premises, this Court should decline to affirm the district court's dismissal on this alternative ground.

Affirming on this alternative ground would also be improper for a procedural reason: in moving to dismiss under Rule 12(b)(6) on this basis, Sharpe relied on evidence outside the pleadings, including media reports and other documents. Favre should have an opportunity to develop his own evidence on the falsity of the underlying facts before any adverse judgment against Favre on this ground is

25

entered. *See Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (vacating Rule 12(b)(6) dismissal where district court "considered evidence outside the pleadings" and "a genuine issue of material fact appear[ed] to exist"); *Hayne v. The Innocence Project*, 2011 WL 198128, at *9 (S.D. Miss. Jan. 20, 2011) (denying motion to dismiss because "Plaintiff has not had the opportunity to present his own evidence with regard to the factual predicates of Defendants' purported opinions": "Accordingly, the Court rejects Defendants' argument that the statements at issue were non-actionable statements of opinion.").

### B.     Sharpe's Statements Are Not Privileged Reports of an Official Proceeding.

Nor should this Court affirm the district court's dismissal on the alternative ground—which the district court did not reach—that Sharpe's comments were predicated on reports of official proceedings. This fair-comment privilege does not avail a speaker who, like Sharpe, markedly deviates from allegations in the official reports. *See Doe v. Doe*, 941 F.2d 280, 291–92 (5th Cir. 1991) (holding that statements that differed from official reports were actionable); *Brocato v. Miss. Publishers Corp.*, 503 So.2d 241, 244 (Miss. 1987) (adopting Restatement (Second) of Torts § 611 & cmt. f (1977) (providing that privilege applies only if speaker gives an "accurate and complete or a fair abridgement of the occurrence reported," and noting that speaker is not privileged to "make additions of his own that would convey a defamatory

impression, nor to impute corrupt motives to any one")).

At the time Sharpe repeatedly alleged on *Undisputed* that Favre "stole money" from people in need, no official proceeding or report had made that allegation. Although Sharpe on appeal refers to allegations in MDHS's original complaint against Favre (*see* Sharpe Br. at 52), that complaint made no allegations that Favre stole anything from anyone. Instead, the complaint brought contractual, tort, and other claims in connection with payments from the nonprofit MCEC to Favre Enterprises and to a third-party company, Prevacus—but the complaint never alleged that Favre knew or was told anything about the source of the funds. (ROA.171–251.) Further, as soon as Favre's motion to dismiss reminded MDHS of the indisputable fact that Favre had already repaid the $1.1 payment to his company—which he did as soon as he was made aware of the funds' source— MDHS voluntarily dismissed its claims regarding that payment and stated: "Favre repaid the $1.1 million to the State." (ROA.271 ¶ 105).

*McDonald* and *Pittman*, which Sharpe cites (*see* Sharpe Br. at 51), are distinguishable because the defendants there accurately reported on official proceedings: in *McDonald*, a local television news station "did no more than accurately broadcast information that had been furnished directly by law enforcement officials"; in *Pittman*, a local newspaper recited information from the

plaintiff's "indictments and his sentencing hearing in federal court." *See McDonald v. Raycom TV Broad., Inc.*, 665 F. Supp. 2d 688, 691 (S.D. Miss. 2009); *Pittman v. Gannett River States Pub. Corp.*, 836 F. Supp. 377, 383–85 (S.D. Miss. 1993). Here, however, Sharpe manufactured a falsehood about Favre's conduct on his own, and he spread that falsehood to *Undisputed*'s viewership.

## CONCLUSION

The dismissal of Favre's action should be reversed, and his complaint reinstated.

Dated:    New York, New York
           February April 3, 2024

By: /s/ Daniel R. Benson

KASOWITZ BENSON TORRES LLP

Daniel R. Benson
Daniel J. Koevary
Amit R. Vora
1633 Broadway
New York, NY 10019
212-506-1700

Eric D. Herschmann
210 Lavaca Street
Austin, Texas 78701
New York, New York 10019
512-551-3344

MICHAEL J. SHEMPER, PLLC
Michael J. Shemper
140 Mayfair Road, Suite 1200
Hattiesburg, MS 39402
601-545-7787

*Counsel for Plaintiff–Appellant
Brett Lorenzo Favre*

## CERTIFICATE OF SERVICE

I certify that on April 3, 2024, I served a copy of the foregoing on all counsel of record by CM/ECF.

Dated: April 3, 2024

/s/ Daniel R. Benson

Daniel R. Benson
*Counsel for Plaintiff-Appellant
Brett Lorenzo Favre*

## CERTIFICATE OF COMPLIANCE

This reply brief complies with the type-volume, typeface, and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) & (7)(B), and Fifth Circuit Rules 32.1 & 32.2. Excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, the reply brief contains 6,498 words and was prepared using Microsoft Word for Microsoft Office 365 and produced in Equity A 14-point font.

Dated: April 3, 2024

*/s/ Daniel R. Benson*

Daniel R. Benson
*Counsel for Plaintiff-Appellant*
*Brett Lorenzo Favre*