# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
September 16, 2024
Lyle W. Cayce
Clerk

No. 23-60610

Brett Lorenzo Favre,

*Plaintiff—Appellant*,

versus

Shannon Sharpe,

*Defendant—Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:23-CV-42

_____

Before Southwick and Duncan, *Circuit Judges*, and Kernodle, *District Judge*.[*]

Leslie H. Southwick, *Circuit Judge*:

    This suit is between two former professional football players. The defendant ex-player was a co-host of a sports talk show during which he said the plaintiff stole funds from a government program meant for those living in poverty. The plaintiff sued for defamation, but the district court categorized the talk-show comments as hyperbole for which there was no liability. The

---

[*] United States District Judge for the Eastern District of Texas, sitting by designation.

court dismissed the suit on the pleadings. We apply a different doctrine that also protects the comments and AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

Brett Favre is a Mississippi native. He was a star football player for the University of Southern Mississippi ("USM") and then had a lengthy professional career, primarily with the Green Bay Packers of the National Football League. He was named three times as the NFL's Most Valuable Player, had a Super Bowl victory, and was selected for the NFL Hall of Fame. Much more recently, his public image has been somewhat tarnished by his connection to individuals who were convicted for the misuse of government welfare funds and his alleged receipt of some of those funds.

We start with an explanation of the misuse of funds.[1] In October 2021, the Mississippi State Auditor's Office determined more than $77 million in federal Temporary Assistance for Needy Families ("TANF") funds intended to help impoverished Mississippians were used for illegal purposes across the state. To date, six individuals have pled guilty to state and federal felony charges related to their involvement in this scandal. Favre has not been criminally charged. Mississippi's Department of Human Services ("MDHS") filed a civil suit in May 2022 against Favre and numerous

---

[1] Both parties submitted documents to the district court that go beyond the four corners of Favre's complaint to provide details on the welfare scandal. Although a "district court generally must not go outside the pleadings," it "may consider documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quotation marks and citations omitted). The district court took judicial notice of documents and facts related to the welfare scandal, finding them "integral to Favre's claim." *See id.* We will not explore the reach of judicial notice but will set out some of these details because neither party objected to their use by the district court.

persons, seeking to recover TANF funds that were unlawfully diverted between 2016 and 2019.

MDHS initially sought to recover $1.1 million in TANF funds Favre received from the non-profit Mississippi Community Education Center, Inc. ("MCEC") in 2017 and 2018 for speaking engagements that he never performed. Favre had repaid the funds prior to MDHS's suit. MDHS amended its complaint to recover $5 million in TANF funds Favre allegedly arranged to be used to fund the construction of a new USM volleyball facility. According to MDHS, Favre was unable to encourage sufficient donations for the facility's construction, so he turned to the non-profit MCEC to help secure the $5 million in funding. TANF funds were ultimately used on the project.

Local and national news outlets continued to cover developments in the welfare scandal and Favre's alleged involvement. During that time, two events occurred that gave rise to this lawsuit. The first was a September 13, 2022, article in an online news source called *Mississippi Today*. The article detailed the MDHS's recent filing of a civil suit against Favre. The article included text messages between Favre and one of the six individuals later convicted in the scandal, Nancy New, that discussed the construction funding of USM's volleyball facility and how it was likely the media would not determine the source of the funds.[2] According to the *Mississippi Today* article, these texts were proof that Favre worked with New to orchestrate MCEC's use of the $5 million in TANF funds for the volleyball facility. The article stated the separate $1.1 million was a way to receive more funds for

---

[2] New is the former president and CEO of the MCEC non-profit, which received and illegally disbursed TANF funds. She pled guilty to 13 felony counts related to the scandal.

the project. It also acknowledged Favre denied knowing the money received for the project came from the TANF program.

The other event underlying this suit occurred the day after the *Mississippi Today* article appeared online. The defendant, Shannon Sharpe, along with Skip Bayless, hosted a nationally broadcasted sports talk show called *Undisputed*. Sharpe also had an exceptional professional football career. He played 14 seasons in the NFL, was on three Super Bowl winning teams, and was inducted into the NFL Hall of Fame. The relevant segment opened with the moderator briefly summarizing the *Mississippi Today* article and then asking Sharpe for his thoughts about its impact on Favre's legacy. Sharpe and Bayless then engaged in an eleven-minute discussion about Favre, the welfare scandal, and MDHS's civil suit. The hosts provided colorful and derogatory views on the article, calling Favre "a sleazeball," "shady," "gross[]," and a "diva," and accusing Favre of "steal[ing]," "egregious" behavior, and "illegal activity."

Favre viewed three of Sharpe's statements as defamatory:

1. "The problem that I have with this situation, you've got to be a sorry mofo to steal from the lowest of the low";
2. "Brett Favre is taking from the underserved" in Mississippi; and
3. Favre "stole money from people that really needed that money."

Favre sent Sharpe a letter demanding he retract these statements, apologize, and cease and desist from making any "further defamatory falsehoods against Favre." Sharpe refused. Favre sued for defamation in a Mississippi state court. Favre alleged in his complaint that these three statements injured his reputation, falsely accused him of serious crimes, and were defamatory in nature.

Sharpe removed the case to the United States District Court for the Southern District of Mississippi based on diversity jurisdiction. He then filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss Favre's complaint for failure to state a claim. Sharpe argued (1) the challenged comments are "a classic example of the kind of rhetorical hyperbole and loose, figurative language" protected by the First Amendment, and (2) Mississippi law protects Sharpe's critical comments because they discuss a matter of public concern and are drawn from official proceedings.

The district court granted Sharpe's Rule 12(b)(6) motion because Sharpe's comments were "mere rhetorical hyperbole," which made the comments "unactionable." The court concluded that "no reasonable person listening to the Broadcast would think that Favre actually went into the homes of poor people and . . . committed the crime of theft/larceny" because "[l]isteners would have recognized Sharpe's statements as rhetorical hyperbole." Favre timely appealed.

## DISCUSSION

We review a Rule 12(b)(6) dismissal *de novo*. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023). To survive a Rule 12(b)(6) motion, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quotation marks and citations omitted). "A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail." *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021). We take the factual allegations in the complaint as true but disregard conclusory allegations and legal conclusions. *Id.*; *Allen*, 65 F.4th at 743. We resolve "[a]ll questions of fact . . . in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001).

No. 23-60610

The district court ruled only on Sharpe's rhetorical-hyperbole argument when it concluded Favre's defamation claim failed as a matter of law. It did not analyze Sharpe's other grounds, which were that his statements were protected under Mississippi law as opinions based on disclosed facts or as reports of official proceedings. This court may affirm a district court's dismissal of a suit for failure to state a claim "on any basis supported by the record." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780–81 (5th Cir. 2007). A different ground raised as a defense provides the clearest ground on which to rule. We therefore do not analyze rhetorical hyperbole and instead analyze whether the statements were protected opinions based on disclosed factual premises.

Our analysis does not turn on the mere labeling of a statement as "fact" or "opinion." *Roussel v. Robbins*, 688 So. 2d 714, 723 (Miss. 1996) (discussing *Milkovich v. Lorain J. Co.*, 497 U.S. 1 (1990)). "[A] statement, even if phrased as an opinion, will not enjoy constitutional protection if the court concludes that its substance or gist could reasonably be interpreted as declaring or implying an assertion of fact." *Franklin v. Thompson*, 722 So. 2d 688, 693 (Miss. 1998) (quotation omitted). Instead, "[t]he relevant inquiry is whether the statement could be reasonably understood as declaring or implying a provable assertion of fact." *Id.* (quotation omitted); *see also Milkovich*, 497 U.S. at 21–22.

Mississippi recognizes that "a defamatory communication may [be] . . . in the form of an opinion," and "[o]pinion statements are actionable only if they clearly and unmistakably imply the allegation of undisclosed false and defamatory facts as the basis for the opinion." *Ferguson v. Watkins*, 448 So. 2d 271, 275–76 (Miss. 1984); *see* Restatement (Second) of Torts § 566 (Am. L. Inst. 1977). Further, "offensive insults and opinion statements" "generally are not actionable in Mississippi" unless they meet the *Ferguson* standard. *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 493

6

(5th Cir. 2013). This is because "nothing in life or our law guarantees a person immunity from occasional sharp criticism," and "no person avoids a few linguistic slings and arrows, many demonstrably unfair." *Id.* (alterations and citation omitted). Thus, "strongly stated [opinions] . . . based on truthful established fact . . . are not actionable under the First Amendment." *Id.* (quoting *Texas Beef Grp. v. Winfrey*, 201 F.3d 680, 688 (5th Cir. 2000)). The Mississippi Supreme Court has described such "[c]austic commentary" based on disclosed facts as "fair comment[s]." *Ferguson*, 448 So. 2d at 276.

Sharpe argues his statements are protected opinions and editorial "fair comments" on a publicly known matter, and "even 'contemptuous language' and 'unfair' criticism regarding reported facts cannot be defamatory." He asserts the *Undisputed* broadcast clearly stated its factual basis was Favre's widely reported involvement in the welfare scandal and that involvement was a matter of public concern. Because Sharpe expressed his views on these "truthful established fact[s]," he argues he was entitled to voice his "sharp criticism" of Favre's conduct.

Favre disagrees and argues that, even if Sharpe's statements are considered protected opinions, those statements are still actionable because Sharpe did not provide a correct and complete recitation of "the facts upon which he base[d] his opinion" and the statements "imply a false assertion of fact." *See Milkovich*, 497 U.S. at 18–19. According to Favre, "the factual basis for Sharpe's purported opinions was incorrect and incomplete" because the *Undisputed* broadcast omitted facts from the *Mississippi Today* article about Favre's contributions to USM and about who initiated the funding process for USM's volleyball facility.[3]

---

[3] After briefing concluded, Favre submitted a 28(j) letter to notify the court of a recent Second Circuit opinion that vacated a Rule 50 judgment and jury verdict. *See Palin v. New York Times Co.*, ___F.4th___, No. 22-558, 2024 WL 3957617 (2d Cir. Aug. 28, 2024).

Sharpe's statements — in response to facts widely reported in Mississippi news and specifically in the just-released *Mississippi Today* article — could not have been reasonably understood as declaring or implying a provable assertion of fact. His statements are better viewed as strongly stated opinions about the widely reported welfare scandal. As for the supposed factual inaccuracies with which Favre takes issue, those inaccuracies were corrected during the segment. Bayless correctly stated that "as yet [Favre] has not been criminally charged," and he amended Sharpe's one inaccurate statement that Favre had not repaid the additional $1.1 million in TANF funds by acknowledging that Favre had repaid everything but the interest on $1.1 million. Sharpe also mentioned Favre's assertion that he did not know the source of the funds. Because Favre does not allege any remaining statements in the broadcast were false, there were no actual inaccuracies. Instead, the facts were fully disclosed to the listeners and contained no "clear falsity of fact." *Ferguson*, 448 So. 2d at 273.

It is understandable that Favre considers Sharpe's statements to be contemptuous. Nonetheless, the *Undisputed* program did not imply that Sharpe was relying on any undisclosed facts. He instead relied only on facts widely reported in Mississippi news and specifically in the just-released *Mississippi Today* article. Though there was no claim by *Mississippi Today* that Favre had committed a crime, there also was no implication from Sharpe's statements that he was relying on information from other sources when he said Favre "stole money" and took from the "underserved." At the time Sharpe made the statements, the facts on which he was relying were publicly

---

There, the Second Circuit considered "whether the evidence at trial was sufficient for Palin to prove that the defendants published the challenged statements with actual malice, as required for public-figure defamation plaintiffs." *Id.* at *7. That is not the issue before this court, and we do not find the opinion relevant to the resolution of this case.

8

known, and Sharpe had a right to characterize those publicly known facts caustically and unfairly. Sharpe's statements were his "strongly stated" opinions "based on truthful established fact[s]," and thus nonactionable. *Trout Point Lodge*, 729 F.3d at 493 (quotation omitted).

AFFIRMED.